**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CARLA DANCY HINES,** *et al.* | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 1:21-cv-679 (DLF)** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | |
| **Defendant.** | |

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**ITS MOTION TO DISMISS THE PLAINTIFFS' AMENDED COMPLAINT**

**COMES NOW** Defendant Washington Metropolitan Area Transit Authority (hereafter "WMATA" or "Defendant"), by and through undersigned counsel, and submits this memorandum of points and authorities in support of its Motion to Dismiss.

Plaintiffs Carla Dancy Hines and Anthony Dancy, both individually and as co-personal representatives of the Estate of Senella Dancy, filed the instant Amended Complaint pertaining to the death of Senella Dancy (hereafter "Decedent"). Plaintiffs' Amended Complaint asserts negligence claims (based on common law and for wanton conduct) pertaining to the death of the Decedent and seeks recovery pursuant to a survival action (Count I) and wrongful death (Count II).

## I.    FACTUAL BACKGROUND

The relevant facts asserted in the Amended Complaint are as follow:

- On March 14, 2019, the Decedent entered the Fort Totten Station and was in the station platform area; (*See* Amend. Compl. at ¶¶ 14.)

- Decedent exited the station platform area and trespassed onto the train tracks; (*See id*. at ¶¶ 21 and 26.)

- Decedent was struck by a train and killed as a result of her being present on the train track. (*See id*. at ¶ 26.)

## II.   LEGAL STANDARD

### a.   Fed. R. Civ. P. 12(b)(1)

A party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal district courts are courts of limited jurisdiction and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Thus, to survive a Rule 12(b)(1) motion, the plaintiff must demonstrate that the court has jurisdiction by a preponderance of the evidence. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

"When ruling on a Rule 12(b)(1) motion, the court must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016). Those factual allegations, however, receive "closer scrutiny" than they would in the Rule 12(b)(6) context. *Id*. If the court determines that it lacks jurisdiction, the court must dismiss the claim or action. *See* Fed. R. Civ. P. 12(b)(1) and 12(h)(3).

### b.   Fed. R. Civ. P. 12(b)(6)

A party may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *id.*, and must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. To state a facially plausible claim, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint alleging "facts [that] are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*, quoting *Twombly*, 550 U.S. at 557.

A complaint can also be dismissed under Rule 12(b)(6) when it is "patently obvious" that the plaintiff cannot possibly prevail based on the facts alleged in the complaint. *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990).

When evaluating a Rule 12(b)(6) motion, the court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). Conclusory allegations, however, are not entitled to an assumption of truth, and even allegations pleaded with factual support need only be accepted insofar as "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Finally, a Rule 12(b)(6) dismissal for failure to state a claim "is a resolution on the merits and is ordinarily prejudicial." *Buchwald v. Citibank, N.A.*, 2013 WL 5218579, at *5 (D.D.C. Sept. 17, 2013), quoting *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992); *see also* Fed. R. Civ. P. 41(b).

III.   **ARGUMENT**

     a.   **This Court Does Not Have Jurisdiction Over Plaintiff's Negligent Failure to Warn Claim**

        i.   **WMATA's Sovereign Immunity**

WMATA was created as the result of a compact signed by Maryland, Virginia and the District of Columbia and consented to by Congress (hereafter the "Compact"), and, therefore, WMATA is an instrumentality of Maryland, Virginia, and the District of Columbia. *See* D.C. Code § 9-1107.01 *et seq.*; *see also Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997). In creating WMATA, "the signatories to the Compact, together with Congress, [ ] conferred their respective sovereign immunities (including immunity under the Eleventh Amendment) on WMATA;" they then proceeded, however, to "partially waive[ ] those immunities in Section 80 of the Compact" permitting suits for torts "committed in the course of any proprietary function." *Sanders v. WMATA*, 819 F.2d 1151, 1154 (D.C. Cir. 1987), citing *Morris v. WMATA*, 781 F.2d 218, 222 (D.C. Cir. 1986). Specifically, Section 80 of the WMATA Compact provides that "[t]he Authority shall be liable . . . for its torts and those of its Directors, officers, employees and agents committed in the course of any proprietary function . . . but shall not be liable for any torts occurring in the performance of a governmental function." D.C. Code § 9-1107.01; *see also Burkhart*, 112 F.3d at 1216.

The D.C. Circuit has held that the "question [of] whether the function in question is 'governmental' or 'proprietary' under Section 80 is one of federal law," *Sanders*, 819 F.2d at 1154, and has "developed two alternative tests for identifying 'governmental' functions under the WMATA Compact," *Burkhart*, 112 F.3d at 1216, citing *Dant v. District of Columbia*, 829 F.2d 69, 74-75 (D.C. Cir. 1987). First, "[i]f an activity is a 'quintessential[ ] governmental' function, such as 'police activit[y],' it is within the scope of WMATA's sovereign immunity." *Id.* "For those

activities that are not quintessential governmental functions, immunity will depend on whether the activity is "discretionary" or "ministerial.'" *Id.* "Only those activities considered 'discretionary' are shielded by sovereign immunity." *Id.*

As it is generally "difficult to distinguish between public and private sector functions with any precision beyond obviously public activities like law enforcement," the immunity question often turns on this latter test – *i.e.*, determining whether the challenged activity is discretionary or ministerial in nature. *Beebe v. WMATA*, 129 F.3d 1283, 1287 (D.C. Cir. 1997). The D.C. Circuit has indicated that courts, in analyzing whether an action is discretionary and, therefore, immune under the Compact, should look to and apply federal case law interpreting the discretionary function exception under the Federal Tort Claims Act, which employs the same discretionary/ministerial dichotomy. *See id.*; *see also Sanders*, 819 F.2d at 1155 (concluding that in "granting immunity from tort actions to WMATA's 'governmental functions,' the Compact seems to us to have accepted" the federal concept of a government function as applied to the FTCA's discretionary function exception, thereby creating a "strong inference that governmental function tort suits are to be governed by federal law -- as that law has been stated in the Tort Claims Act").

Accordingly, a court must first "ask whether any 'statute, regulation or policy specifically prescribes a course of action for an employee to follow.'" *Beebe*, 129 F.3d at 1287, quoting *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995). "If no course of action is prescribed, we then determine whether the exercise of discretion is 'grounded in social, economic, or political goals.'" *Id.*, quoting *Cope*, 45 F.3d at 448. "If so grounded, the activity is 'governmental,' thus falling within section 80's retention of sovereign immunity." *Id.*

218752-1

### ii.        Plaintiffs' Failure to Warn Claim Must Be Dismissed

Plaintiffs bring a claim against WMATA for negligent failure to warn the Decedent of the entrance to the track off of the station platform. Plaintiffs make the following allegations in the Amended Complaint:

- WMATA "negligently failed to warn of or otherwise make safe the premises so as to prevent Ms. Dancy from unknowingly, in her confused state from going onto the tracks." (Amend. Compl. at ¶ 23.)

- WMATA failing to "…warn [Ms. Dancy] of the dangers of the entrances to the track…" (*Id.* at ¶ 25(s).)

- "…Ms. Dancy, was struck by a WMATA train, when she, in a confused state went through an unmarked gate onto the tracks and was struck by a WMATA train throwing her to the ground resulting in her death." (*Id.* at ¶ 26.)

However, WMATA has sovereign immunity from such a claim and, accordingly, Plaintiffs' failure to warn claim must be dismissed.

WMATA's sovereign immunity for a failure to warn claim has been recognized before by the D.C. Circuit and by this Court. In *Abdulwali v. WMATA*, the D.C. Circuit heard an appeal in which the plaintiff's son died after falling through a gap between the train cars when he was trying to move from car-to-car on a moving train. 315 F.3d 302, 303 (D.C. Cir. 2003). The plaintiff sued WMATA and claimed that it "failed to warn passengers adequately of the dangers of travelling between cars on a moving train." *Id.* On appeal, the D.C. Circuit held that "the [WMATA] Compact does not prescribe any design specifications for Metro cars, leaving the Transit Authority with broad discretion to design all transit facilities and to enter into contracts for their operation and furnishment." *Id.* at 304-305, citing D.C. Code Ann. §§ 9-1107.01(12)(f), 13(a). In determining if

WMATA's choices as to the warning was discretionary, the D.C. Circuit noted that WMATA "was required to make choices", that WMATA considered issues such as safety, aesthetics, costs, and emergency response reactions in relation to a warning and that "[j]udicial review 'in such decision making through private tort suits would require the courts to second guess the Transit Authority's policy judgments." *Id.* at 305, citing *U.S. v. Varig Airlines*, 467 U.S. 797, 720 (1984). Accordingly, the D.C. Circuit held that "sovereign immunity barred the failure to warn claim." *Id.*

In another case, *Wainwright v. WMATA*, this Court dealt with a claim by a plaintiff that as he was exiting the Dupont Circle Metrorail Station his right foot became trapped in an escalator between the step and the comb plate and he suffered injuries as a result. 903 F. Supp. 133, 135 (D.D.C. 1995). The plaintiff brought suit against WMATA for a claim of failure to warn and WMATA filed a motion to dismiss on grounds that "whether to post warnings" was covered by sovereign immunity. *Id.* at 136. In granting WMATA's motion to dismiss and holding that it was immune from such a claim, Judge Lamberth noted that the D.C. Circuit, in *Dant v. D.C.*, 829 F.2d 69, 74-75 (D.C. Cir. 1987), "has held that design and planning of a transportation system are governmental activities; they involved quasi-legislative policy decisions which are discretionary in nature and thus immune from suit." *Id.* This Court went on to note that not only does the duty to warn involve a governmental function – the "[d]uty to warn has also been held to be a discretionary function for which the government retains immunity." *Id.* at 137, citing *Shuman v. U.S.*, 765 F.2d 283, 291 (1st Cir. 1985). Accordingly, Judge Lamberth agreed with WMATA's argument that its decisions as to the station design and warnings were protected by sovereign immunity, and dismissed the plaintiff's failure to warn claim, by ruling "…there is no basis on which to conclude that WMATA has waived its immunity for design defects and failure to warn." *Id.* at 139.

218752-1

Other jurisdictions have similarly found that failure to warn claims brought under the FTCA are barred by sovereign immunity.[1] These cases further support a finding that WMATA is protected by its sovereign immunity for a failure to warn claim. Application of sovereign immunity in those cases recognizes that "[e]valuation of actual or suspected hazards, and the decision to proceed in a particular manner in light of those hazards, are protected discretionary acts, not subject to tort claims." *Ford v. American Motors Corp.*, 770 F.2d 465, 467 (5th Cir. 1985). For example, the First Circuit found that the government's decision whether or not to warn contractors of the hazards of working with asbestos falls "plainly" within the discretionary function exception. *Shuman v. United States*, 765 F.2d 283, 291 (1st Cir. 1985). In *Shuman*, the government had discretion under the applicable act for the warnings and safety measures to be utilized in a shipyard where plaintiff's deceased husband labored. *Id.* at 290. The plaintiff nonetheless challenged the government's decision not to issue warnings or make the workplace safe in its capacity as a ship owner. *Id.* at 291. The court found it would be improper to hold the government to the common law standards that would apply to a private actor in the same role. *Id.* The issuance of warnings and implementation of safety measures were committed to the discretion of the government. *Id.* In determining that the government was immune from the plaintiff's claims, the court noted that the FTCA intended to protect the government from suits resulting from an exercise of governmental discretion "despite the magnitude of the injuries that flow therefrom." *Id.* at 295.

Here, consistent with the cases cited above, WMATA's decisions as to what warnings to provide to persons on the platform falls squarely within the discretionary function exception and is barred by WMATA's sovereign immunity. Significantly, Plaintiffs fail to allege that WMATA

---

[1] *See Sanders*, 819 F.2d at 1155 (noting that in granting immunity from tort actions to WMATA's government functions, the WMATA Compact seems to have accepted the test applied under the Federal Tort Claim Act).

failed to follow any specific policy, regulation or code provision requiring a specific warning to the public. Plaintiffs' failure to do so warrants dismissal under Fed. R. Civ. P. 12(b)(6). *See Felder v. WMATA*, 105 F. Supp. 3d 52, 59-60 (D.D.C. 2015) (granting WMATA's motion to dismiss when the plaintiff did not cite to a specific policy, regulation or code provision that WMATA violated.)

Further, as stated *supra*, courts have found that decisions considering issues of fiscal constraints, public safety, and public perception were decisions requiring the exercise of political, social and economic judgment. *See Burkhart*, 1112 F.3d at 1217. The Fourth Circuit has observed that "[t]he decision to warn is 'replete with choices' and requires 'ascertaining the need for a warning and its cost, determining the group to be alerted, as well as the content and procedure of such notice, and ultimately balancing safety with economic concerns." *Minns v. United States*, 155 F.3d 445 (4th Cir. 1998), quoting *Maas v. United States*, 94 F.3d 291, 297 (7th Cir. 1996).

WMATA's decision of what warnings to place at the end of the platforms is susceptible to consideration of several recognized policy concerns, such as public perception, resource allocation and safety. For example, issuance of additional and excessive warnings can detract from the importance of the warnings that WMATA chooses to issue. WMATA has discretion to determine which warnings are necessary, and consequently which warnings are not necessary, based on competing policy concerns. *See Valdez v. United States*, 56 F.3d 1177, 1180 (9th Cir. 1995) ("[B]ecause the [National Park Service] cannot apprize the public of every potential danger posed by every feature of the Park, a degree of judgment is required in order to determine which hazards require an explicit warning and which hazards speak for themselves.") Such a determination reflects a consideration of public safety to ensure that the information provided maximizes public safety by arming the public with information that it can utilize to avoid danger or injury.

As such, WMATA has sovereign immunity from claims related to its warning decisions and, therefore, this Court lacks subject matter jurisdiction for Plaintiffs' failure to warn claim. Further, Plaintiffs have failed to state a failure to warn claim. Accordingly, Plaintiffs' failure to warn claim must be dismissed with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

### b.  As the Decedent Was a Trespasser at the Time of the Incident, Plaintiffs' Claims of Common Law Negligence Must Be Dismissed

### i.  The Decedent Was a Trespasser

It is undisputed that the Decedent was on the train tracks at the time of the incident. (*See* Amend. Compl. at ¶ 26 ("…Ms. Dancy, was struck by a WMATA train, when she, in a confused state went through an unmarked gate onto the tracks and was struck by a WMATA train throwing her to the ground resulting in her death.")). However, the train tracks are an area where the public is not invited or permitted to enter by WMATA. *See Whitaker v. WMATA*, 1984 U.S. Dist. LEXIS 16712, *12 (D.D.C. May 14, 1984) ("When plaintiff in the instant case left the platform and entered the subway tunnel, he exceeded the scope of his status as a fare paying passenger who was lawfully on the premises and became a trespasser."). "It is clear that there is no justification for a reasonable person to believe that [WMATA] would consent to the entry of the public into the subway tunnel and onto the tracks." *Id.* at *14, *see also Johnson v. Washington Metropolitan Area Transit Authority*, 98 F.3d 1423, 1425 (D.C. 1996) (Decedent who jumped from WMATA platform onto the tracks was a trespasser).

Plaintiffs' allegations that the Decedent was suffering from dementia and did not have full control over her actions and/or was in a confused state is of no significance as to the analysis of the Decedent's status as a trespasser. *See Whitaker,* 1984 U.S. Dist. LEXIS at *15 ("The definition of a trespasser, as set forth in *Firfer* applies 'regardless of how the person entered the premises (accidently, intentionally, or inadvertently), or why the person remained on the

218752-1

property.'"), *citing Copeland v. Baltimore & Ohio Railroad Co.*, 416 A.2d 1, 2-3 (D.C. 1980). As stated in *Whitaker*, "the fact that plaintiff was intoxicated at the time of the accident and not in full control of his actions does not change his status as a trespasser." 1984 U.S. Dist. LEXIS at *15. Additionally, in *Copeland*, the D.C. Court of Appeals affirmed the ruling of the trial court that despite being in an unconscious/semi-conscious state and not recalling being placed on the train tracks, the plaintiff was still a trespasser. 416 A.2d at 2-3 (D.C. 1980). Here, despite any alleged ailment, the Decedent was a trespasser at the time of the incident.

> ii.   **Plaintiffs Cannot Recover for Claims of Common Law Negligence**

As the Decedent was a trespasser, Plaintiffs can only recover for "intentional, wanton or willful injury or maintenance of a hidden engine of destruction."[2] *Holland v. Baltimore & O.R. Co.*, 431 A.2d 597, 599 (D.C. 1981). Yet, in Plaintiffs' opposition to WMATA's initial motion to dismiss, they argued that the Decedent was owed only a duty of ordinary care. Plaintiffs' Amended Complaint also makes numerous allegations of liability based on common law negligence. (*See* Amend. Complaint at ¶¶ 23-26, 28-30, 34 and 37-42.) For example, Plaintiffs claim that:

- …WMATA failed to secure any and all gates from the platform to the track in question; (Amend. Compl. at ¶ 23.)

- Negligently failed to lock the doors of the gates to the tracks; (*Id.*)

- Negligently failed to warn of or otherwise make safe the premises so as to prevent Ms. Dancy from unknowingly, in her confused state from going on to the tracks; (*Id.*)

- …failed to label or otherwise post on the gates, any sign, or other warning, advising customers and/or invitees including but not limited to the Plaintiffs' Decedent that they would be entering onto the tracks. (*Id.* at ¶ 24.)

---

[2] "A hidden engine of destruction refers to spring guns and similar devices that are used to protect property." *Whitaker*, 1984 U.S. Dist. LEXIS at *17.

- …negligent…in the following ways: (*Id*. at ¶ 25(a)-(s).)

  – Failing to insure the safety of its visitor and passenger, Ms. Dancy in the Metro Stations;

  – Failing to pay full time and attention to the operation of the Metro trains;

  – Failing to properly monitor the Metro Station and its passengers;

  – Failing to keep a proper look out while in the station manager's kiosk;

  – Failing to properly inspect the Metro Station;

  – Failing to properly monitor security surveillance video;

  – Failing to recognize that the Plaintiff's Decedent had entered onto the train tracks and/or upon observing same failed to do anything about it;

  – Failing to take steps to insure the safety of Ms. Dancy;

  – Failing to notify ROCC that Ms. Dancy was on the tracks of the Metro Station;

  – Failing to monitor the surveillance video of the platform of the Metro Station;

  – Failing to notify ROCC if the station manager's kiosk was left unattended allowing Ms. Dancy, because of her fragile state, both physically and mentally, to access and enter the train tracks and to remain on train tracks for an extended period of time without any interventions being taken to safeguard her or to notify ROCC of her presence on the tracks;

  – Failing to take steps to stop incoming Metro trains from entering the station;

  – Failing to stop the Metro train from operating and striking Ms. Dancy;

  – Failing to pay full time and attention when operating the Metro train on March 14, 2019;

  – Failing to activate the Emergency Stop push button prior to striking Ms. Dancy;

  – Failing to adhere to the WMATA SOP's which reflect applicable standards of care;

  – Failing to comply with applicable WMATA Safety Rules and Regulations;

218752-1

– Failing to comply with applicable WMATA Standard Operating Procedures;

– Otherwise negligently failing to take steps to protect Ms. Dancy, to warn her of the dangers of the entrances to the track, failing to secure gates that led to the track, and otherwise negligently operating the station, and the Metro train;

- That the Defendant, WMATA, owed a duty of care to the Decedent, Ms. Dancy, to oversee, operate, manage, and maintain the Metro Station with a degree of care and skill that a reasonably competent station would have exercised under similar circumstances and to comply with all applicable safety rules, procedure, and SOP's. (*Id.* at ¶ 36.)

- That the Defendant's failure and inaction to assist the Decedent constituted negligence… as it was reasonably foreseeable that the Plaintiff's Decedent would suffer harm as a result of the Defendant's aforesaid actions and/or inactions. (*Id.* at ¶ 37.)

- That as a result of the negligence… of the Defendant, the Plaintiff's Estate has been caused to suffer an economic loss of the net estate. (*Id.* at ¶ 38.)

- The Defendant negligently failed to follow its Standard Operating Procedures, and/or its Handbook, and/or to exercise reasonable care that it failed to: (*Id.* at ¶ 39.)

1. Come to the assistance and aid of Plaintiff's Decedent as she was lost, or otherwise confused at the station; (*Id.* at ¶ 39(1))

2. Failed to give the ROCC the information involving the fact that the Plaintiff's Decedent was on the train tracks; (*Id.* at ¶ 39(2))

3. Failed to instruct all train operators approaching the area to stop their trains; (*Id.* at ¶ 39(3))

4. Failed to go the end of the platform where a train would enter the station and to prepare to flag trains down; (*Id.* at ¶ 39(4)).

5. Failed to insure the safety of Ms. Dancy in the Metro Station; (*Id.* at ¶ 39(5))

6. Failed to pay full time and attention to the operation the station; (*Id.* at ¶ 39(6))

7. Failed to properly monitor the station; (*Id.* at ¶ 39(7))

8. Failed to keep a proper look out while in the station kiosk; (*Id.* at ¶ 39(8))

13

9.      Failed to properly inspect the station; (*Id*. at ¶ 39(9))

10.     Failed to properly monitor security surveillance video; (*Id*. at ¶ 39(10))

11.     Failed to recognize that Plaintiff's Decedent, Ms. Dancy was on the train tracks at the station; (*Id*. at ¶ 39(11))

12.     Failed to take steps to insure the safety of Ms. Dancy; (*Id*. at ¶ 39(12))

13.     Failed to notify ROCC that Ms. Dancy was on the tracks; (*Id*. at ¶ 39(13))

14.     Failed to properly monitor the surveillance video of the platform of the Metro Station; (*Id*. at ¶ 39(14))

15.     Failed to notify ROCC if the station manager's kiosk was left unattended; (*Id*. at ¶ 39(15))

16.     Allowed Ms. Dancy, because of diminished capacity and/or confusion to access and enter the train tracks and remain on the tracks for an extended period of time without any interventions being taken to safeguard her or to notify ROCC of her presence on the tracks. (*Id*. at ¶ 39(16))

17.     Failed to take steps to stop incoming Metro trains entering the station; (*Id*. at ¶ 39(17))

18.     Failed to stop a Metro train from operating and striking Ms. Dancy; (*Id*. at ¶ 39(18))

19.     Failed to adhere to the WMATA SOP's which would reflect the applicable standard of care. (*Id*. at ¶ 39(19))

20.     Failed to comply with all applicable WMATA safety rules and procedures. (*Id*. at ¶ 39(20))

21.     Failed to comply with all applicable WMATA standard operating procedures; (*Id*. at ¶ 39(21))

22.     Otherwise failed to take steps to avoid injury to Ms. Dancy. (*Id*. at ¶ 39(22).)

Plaintiff relied on the *Copeland* decision in their prior briefing to allege that the Decedent was a "known trespasser" and thus only owed a duty of ordinary care. However, post-*Copeland* rulings from the D.C. Court of Appeals have rejected that trespassers are owed an ordinary duty

218752-1

of care. For example, in *Holland v. Baltimore & O.R. Co.*, 431 A.2d 597 (D.C. 1981), a railroad

injury case decided one year after *Copeland*, the D.C. Court of Appeals rejected the plaintiff's

attempt to alter established D.C. law as to the duty owed to a trespasser to that of "reasonable

care under the circumstances." In rejecting the argument, the Court of Appeals stated:

> In 1953, the United States Court of Appeals for the District of Columbia Circuit
> set the standard to be applied in suits by trespassers against landowners for
> injuries suffered on the landowners' property. Trespassers may only recover for
> "intentional, wanton or willful injury or maintenance of a hidden engine of
> destruction." [*Firfer v. United States*, 208 F.2d 524, 528 (D.C. 1953).] *Firfer* has
> never been overruled in the District of Columbia. Appellants urge, however, that
> we now abandon *Firfer* in favor of a "reasonable care under the circumstances"
> standard, as adopted in 1972 by the circuit court in *Smith v. Arbaugh's
> Restaurant, Inc.*, 152 U.S. App. D.C. 86, 469 F.2d 97 (1972). While it is clear that
> this court sitting en banc may overrule otherwise binding precedent such as
> *Firfer*, we decline to do so in this instance.

431 A.2d at 599; *see also Edwards v. Consolidated Rail Corp.* 567 F. Supp. 1087, 1098 (D.D.C.

1983) ("The *Holland* court therefore rejected 'the attempt in *Arbaugh's* to rewrite the general

law of tort liability of landowners in the District of Columbia.'"), citing *Holland* at 600.

   In another case decided after *Copeland* -- *Lacy v. Sutton Place Condo. Ass'n*, 684 A.2d

390 (D.C. 1996), the Court of Appeals also barred a trespasser from recovering. In *Lacy,*

Plaintiffs claimed that it was foreseeable that trespassers would be on the property (in an attic),

that the landowner knew that the attic was in a dangerous condition and that the trespasser was

owed a duty of ordinary care. *See* 684 A.2d at 394. In rejecting this argument, the *Lacy* court

stated:

> The Lacys contend that, even if Mr. Lacy was a trespasser, they can recover for
> Sutton's and Legum's breach of duty to them. That position is contrary to the rule
> that a trespasser can recover only for willful and wanton conduct or hidden
> defects. *Washington Metro. Area Transit Auth. v. Ward*, 433 A.2d 1072, 1074
> (D.C. 1966) (recognizing *Firfer*, *supra*, as continuing to state the law regarding a
> landowner's liability to trespassers); *Holland v. Baltimore & Ohio R.R., Co.*, 431
> A.2d 597, 601 (1981) (en banc). Willful and wanton conduct by Sutton and

Legum was not alleged or shown in opposition to the motion for summary judgment.

The Lacys further claim that Sutton and Legum can be held liable because it was foreseeable that Lacy would use the attic, and they had knowledge of the dangerous condition. *Johnson v. Washington Metro. Area Transit Auth.*, 764 F. Supp. 1568, amended, 773 F. Supp. 459, 790 F. Supp. 1174 (D.D.C. 1991). The Lacys contend that Sutton and Legum should have assumed the Lacys were using the space, and therefore should be bound to exercise ordinary care toward trespassers. The standard to which the Lacys refer has not been adopted in this jurisdiction. *See Holland*, supra, 431 A.2d at 601.

*Lacy*, 684 A.2d at 394.

The law in the District of Columbia is settled that a trespasser can only recover for intentional, wanton or willful injury, or maintenance of a hidden engine of destruction. As WMATA cannot be found liable for common law negligence as a result of the Decedent's status as a trespasser, such claims must be dismissed with prejudice. *See Glenn v. CSX Transp. Inc.*, Case No. RDB-14-802, 2014 U.S. Dist LEXIS 159224, *13 (D. Md. Nov. 12, 2014) (dismissing plaintiff's common law negligence claim, holding the defendant only owed a duty to refrain from willful or wanton misconduct towards a trespasser, and the defendant owed no duty to the plaintiff to refrain from acting negligently.).

### c.   **Plaintiffs Have Failed to Plead a Claim That WMATA Breached a Duty Owed to the Decedent as a Trespasser**

### i.   **The Factual Allegations Do Not Establish "Wanton" Conduct by WMATA in Causing the Decedent's Death**

A trespasser can only recover for intentional, wanton or willful injury, or maintenance of a hidden engine of destruction. The Amended Complaint does not mention intentional or willful injury, or injury from the maintenance of a hidden engine of destruction. Rather, the Amended Complaint (in addition to claims of common law negligence) contains claims of injury caused to the Decedent due to WMATA's alleged "wanton" conduct. The D.C. Court of Appeals has found

218752-1

that wanton means that the conduct is characteristic of extreme recklessness and utter disregard for other's rights. *Safeway Trails, Inc. v. Schmidt*, 226 A.2d 317, 320 (D.C. 1967); *see also Gould v. De Beve*, 330 F.2d 826, 829 (D.C. 1964) ("…or performing or not performing that act with ruthless and wanton disregard of its probable consequence.").

In *Glenn v. CSX Transp. Inc.*, a case involving a plaintiff who was injured when he attempted to pass between the cars of a train on railroad tracks in Baltimore, Maryland, the District Court found allegations that the defendant did not have signage to warn members of the public, knew and allowed the public to cross across its tracks for a long period of time, did not have watchmen to prevent injury from those on the tracks, and did not have cameras to observe trespassers on the tracks, could not be considered "wanton or willful." *See* 2014 U.S. Dist at *13-*14. The District Court granted the motion to dismiss given that the allegations were insufficient to state a claim for "wanton or willful" conduct on the part of the defendant. *Id*.

Here, the Amended Complaint also fails to sufficiently allege wanton conduct, alleging the following conduct on the part of WMATA:

- Not knowing that the Decedent was 78 years old, fragile, with brain atrophy with senile changes. (*See* Amend. Compl. at ¶ 7.)

- Not knowing that the Decedent had never ridden or used a subway before. (*See id*.)

- Not knowing that the Decedent was in the station for two and on-half hours. (*See id*. at ¶ 15.)

- Not knowing that the Decedent was confused and did not know what train to take. (*See id*.)

- Not knowing that the Decedent was unable to board a train. (*See id*.)

- Allowing the Decedent to walk back and forth on the platform (*See id*. at ¶ 16.)

- The station manager not continuously monitoring the "safety and surveillance video" (*See id*. at ¶ 19.)

218752-1

- Not stopping the Decedent from entering the train tracks. (*See id*. at ¶ 21.)

- Observing the Decedent "walk up the track for approximately 100 yards." (*Id*.)

- Failing to secure platform gates so as to prevent the Decedent from entering the train tracks. (*See id*. at ¶ 23.)

- Failing to label platform gates to notify the Decedent that she was entering the train tracks. (*See id*. at ¶ 24.)

- Failing to stop incoming trains. (*See id*. at ¶ 22.)

Such conduct, even if true, does not allege a claim of wanton conduct on the part of WMATA. First, the allegations as to the Decedent being elderly, being present in the station, waiting for a train and pacing on the platform is conduct which is no different from everyday passengers. It cannot be said that WMATA not noticing such behavior rises to the level of "wanton" misconduct as established by the D.C. Court of Appeals -- "extreme recklessness" or an "utter disregard for other's rights." *Safeway Trails*, 226 A.2d at 320. Further, as in *Glenn*, where there were similar allegations of a person being injured on the tracks, not having warning signs to warn the public, knowledge that trespassers crossed the train tracks, and not observing the tracks either in person or through a surveillance system – such allegations were insufficient to state a claim for "wanton or willful" conduct. *See Glenn*, 2014 U.S. Dist at * 13-14. At best, the Amended Complaint contains bald and conclusory allegations that an unnamed WMATA employee witnessed the Decedent at an unknown time and did not act quickly enough to prevent the train from striking the Decedent.

There are no factual allegations against WMATA to say that it acted with extreme recklessness and utter disregard for the Decedent's rights. The allegations simply do not rise to the level of wanton conduct. Thus, the claim for negligence based upon any wanton conduct by WMATA must be dismissed.

ii.     **In the Alternative, Plaintiffs Have Failed to Set Forth Specific Factual Detail That WMATA's Conduct Was Wanton**

The Supreme Court, in *Twombly* and *Iqbal*, has eliminated the lax pleading standard that would have once permitted a case such as this to proceed past a Rule 12(b)(6) Motion to Dismiss. These cases redefined the pleading standard under the federal rules and reestablished the plaintiff's burden to properly plead a claim.

In *Twombly*, the Supreme Court held that a complaint's allegations must be facially plausible, meaning the plaintiff must plead factual content that allows the district court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Twombly* at 556. For example, conclusory allegations of an agreement are insufficient to state a claim of conspiracy – factual detail, including a specific time, place, or person involved is necessary. *Id*. at 565, n. 10. The plausibility standard requires more than a simple recitation of the elements of the cause of action; it requires a factual basis that takes the allegations beyond mere conceivability to plausibility. *Id*. at 555.

The Amended Complaint fails to set forth any specific factual detail that WMATA knew that the Decedent was on the tracks. While Plaintiff makes the bald and conclusory statement that WMATA observed the Decedent on the tracks, the WMATA employee who made this observation is never identified, and it is never identified where or when the WMATA employee made this observation. The specific time, place or person requirement in *Twombly* is not satisfied by the vague allegations in the Amended Complaint. Moreover, there is no factual allegation that based on the time of the observation, anything could have been done to avoid the Decedent's death. There is no basis for this Court to take the allegations beyond mere "conceivability to plausibility" of wanton conduct on the part of WMATA. *Twombly* at 555.

Even if Plaintiffs argue that they are entitled to discovery in order to cure their deficiently plead Amended Complaint, that argument has previously been denied by this Court. In *Felder*, WMATA sought dismissal of a negligent training and instruction claim on sovereign immunity grounds. In opposing the motion to dismiss, plaintiff argued "that dismissal of the negligent training and instruction claim would be premature before discovery is conducted...[because] discovery might reveal that there are in fact specific WMATA policies and procedures related to the training of employees…" 105 F. Supp. at 56.

In denying this request, Judge Hogan ruled pursuant to the U.S. Supreme Court's decisions in *Iqbal* and *Twombly*:

> According to the plaintiff, "[w]ithout discovery, it is impossible to know whether such policies and procedures exist." *Id*. A plaintiff may not, however, use discovery to obtain the facts necessary to establish a claim that is plausible on its face pursuant to *Twombly* and *Iqbal* -- even when those facts "are only within the head or hands of the defendant[]." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). As the Supreme Court in *Iqbal* admonished, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. at 678-79.
>
> …
>
> Because the plaintiff alleged no facts to suggest, beyond the plaintiff's own speculation, that WMATA had policies and procedures in place related to employee training, the Court is constrained to find that the Complaint fails to state a claim to relief that is plausible on its face.

*Felder*, 105 F. Supp. 3d at 59.

Further, in *Iqbal*, the Supreme Court rejected the argument for discovery to cure a deficient complaint noting, "that the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process." *Iqbal* at 684-685, citing *Twombly* at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given

218752-1

the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side.").

And, multiple federal courts have expressly rejected a request for discovery prior to evaluating a pleading under the standard established by *Iqbal* and *Twombly*.[3] Significantly, "[t]he language of *Iqbal*, 'not entitled to discovery' is binding on the lower federal courts." *New Albany Tractor v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). To argue otherwise and "permit discovery whenever a plaintiff has failed to satisfy Rule 8's plausibility standard, is simply incompatible with *Iqbal* and *Twombly*." *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 n.7 (9th Cir. 2014). Thus, any request by Plaintiffs for discovery so as to attempt to cure the deficient Amended Complaint must be denied as similar requests have routinely been denied as incompatible with the rule that discovery is available to a plaintiff only after it has been determined that the complaint satisfies the threshold requirements of Fed. R. Civ. P. 8 and *Twombly/Iqbal*, not before. *See Carter v. DeKalb County, Ga.*, 521 Fed. Appx. 725, 728 (11th Cir. 2013) ("discovery follows the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim.").

Accordingly, Plaintiffs' negligence claim based on wanton conduct must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[3] *See, e.g., Mujica v. AirScan Inc.*, 771 F.3d 580, 592 (9th Cir. 2014) ("Plaintiffs' experienced and knowledgeable counsel…could not say that Plaintiffs would be able to amend their complaint to allege acts by the Defendants…with the specificity required by *Iqbal*, absent discovery. The Supreme Court has stated, however, that plaintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it."); *16630 Southfield v. Flagstar Bank*, 727 F.3d 502, 504 (6th Cir. 2013) (under *Twombly* and *Iqbal*, a plaintiff "could not proceed to discovery simply by making bare allegations that the defendants violated the law," but instead "he had to identify facts that plausibly supported this legal conclusion").

218752-1

IV.     **CONCLUSION**

**WHEREFORE**, for the reasons set forth above, WMATA respectfully requests that this Court grant this Motion and dismiss the Amended Complaint with prejudice.

Respectfully submitted,

**KIERNAN TREBACH, LLP**

*/s/ Nimalan Amirthalingam*
Nimalan Amirthalingam, Esquire (#485117)
1233 20th Street, NW,  Suite 800
Washington, D.C. 20036
T: (202) 712-7000
F: (202) 712-7100
namirthalingam@kiernantrebach.com
*Attorneys for Defendant Washington Metropolitan Area*
*Transit Authority*

218752-1