**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CARLA DANCY HINES,** *et al.* | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 1:21-cv-679 (DLF)** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | |
| **Defendant.** | |

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S**
**REPLY TO PLAINTIFFS' OPPOSITION TO ITS**
**MOTION TO DISMISS THE PLAINTIFFS' AMENDED COMPLAINT**

**COMES NOW** Defendant Washington Metropolitan Area Transit Authority (hereafter "WMATA" or "Defendant"), by and through undersigned counsel, and hereby replies to Plaintiffs' Opposition to its Motion to Dismiss the Amended Complaint as follows.

I.     ARGUMENT

    a.  **WMATA Has Sovereign Immunity as to Plaintiffs' Negligent Failure to Warn Claim**

WMATA's Motion to Dismiss the Amended Complaint (hereafter "Motion") on sovereign immunity grounds is based on Plaintiffs' claim that WMATA was negligent in failing to warn of the dangers of entering onto the train tracks. (*See* WMATA Motion at 6.) In its Motion, WMATA asserts immunity as to the claim of failing to warn of dangers of entering the train tracks. In response, Plaintiffs argue they have also alleged a negligent maintenance/operation claim from which WMATA is not immune. However, as alleged, Plaintiffs negligent failure to warn claim only seeks to recover for WMATA's alleged failure to have adequate warnings so as to warn the

Decedent of the dangers of entering onto the train tracks. This is merely a claim related to WMATA's design decisions, not, as Plaintiffs now argue, maintenance or operation of the station.

In *Wainwright v. WMATA,* 903 F. Supp. 133, 137-138 (D.D.C. 1995), this Court recognized the distinction between a failure to warn claim and a negligent maintenance/operation claim when it cited to the D.C. Circuit's ruling in *Dant v. D.C.*, which distinguished between "design on the one hand and negligent operation and maintenance on the other." 829 F.2d 69, 74-75 (D.C. Cir. 1987). In *Dant*, the D.C. Circuit held that WMATA is not subject to attack for "negligent or faulty design." *Id*. As Plaintiffs only attempt to state a claim for negligent design, such a claim is precluded by WMATA's immunity.

Further, Plaintiffs mistakenly assert that "WMATA does not claim that the functions in question were quintessentially governmental activities." (Pls. Opp. at 5.) WMATA stated in its Motion that the design and planning of the transportation system (*i.e.* the warnings it provides to its passengers) is a governmental activity. (*See* WMATA Motion at 7.) This Court, in *Wainwright*, held that station design and warnings were protected by sovereign immunity as the design and planning of the transportation system was a governmental activity that involved quasi-legislative policy decisions that are discretionary in nature and immune from suit. *See* 903 F. Supp. At 136 (D.D.C. 1995). Accordingly, Plaintiffs' negligent failure to warn claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### b. Plaintiffs Should Not Be Entitled to Discovery to Cure a Deficient Amended Complaint

A major policy objective of sovereign immunity is to avoid the burdens, costs and interferences that litigation and the discovery process cause to a government's work and decision-making. Importantly, sovereign immunity is immunity from suit, and not just from liability. *See Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990)

("Sovereign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits."); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "The infliction of those burdens [of discovery] may compromise [sovereign immunity] just as clearly as would an ultimate determination of liability." *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998). The Supreme Court has stated that the "basic thrust" of the immunity doctrine "is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 684-685 (2009), citing *Siegert v. Gilley*, 500 U.S. 226, 236 (1991). Therefore, granting Plaintiffs' request for discovery on the negligent failure to warn claim would "frustrate the significance and benefit of entitlement to immunity from suit." *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996).

Plaintiffs' request for jurisdictional discovery to aid in their attempt to properly plead their claim should not be permitted. Plaintiffs rely solely on speculation and conjecture that WMATA has policies that strip away its discretion as to what warnings it should post in the Metro Stations. Further, the Amended Complaint refers to unspecified WMATA Standard Operating Procedures ("SOP"), "Metro Safety Rules and Procedures Handbook" and "WMATA Safety Rules and Regulations." (*See* Amend. Compl. at ¶¶ 25(p-r), 34, 35 and 39(20-22).).

Not surprisingly, Plaintiffs' argument for discovery is not unique. This Court dealt with this issue in *Felder v. WMATA*, 105 F. Supp. 3d 52 (D.D.C. 2015)*,* when plaintiff was faced with a motion to dismiss on sovereign immunity grounds. In opposing the motion to dismiss, plaintiff requested jurisdictional discovery by arguing "that dismissal of [a] negligent training and instruction claim would be premature before discovery is conducted...[because] discovery might reveal that there are in fact specific WMATA policies and procedures related to the training of employees…" *Felder*, 105 F. Supp. at 56. In denying this request for jurisdictional discovery, Judge Hogan raised

3

doubt that WMATA's own policies could somehow constrain its discretionary decisions. *See id.* at 58. Rather, Judge Hogan noted that in *Burkhart v. WMATA*, 112 F.3d 1207 (D.C. Cir. 1997) "the D.C. Circuit looked only at the D.C. statute that implements the WMATA Compact to conclude that decisions concerning the hiring, training and supervising of WMATA employees involve discretionary functions." *Id.* Similarly here, there is nothing in the WMATA Compact that requires mandatory warnings on gates to the track. In fact, in *Abdulwali v. WMATA,* the D.C. Circuit found, solely on the basis of the language in the WMATA Compact, that there are no design or warning specifications "…leaving [WMATA] with broad discretion to design all transit facilities…" 315 F.3d 302, 304-305 (D.C. Cir. 2003), citing D.C. Code Ann. §§ 9-1107.01(12)(f), 13(a). Therefore, Plaintiffs' request in the instant case for discovery of WMATA's policies as to warnings is irrelevant to an immunity inquiry.

Further, in *Felder*, Judge Hogan denied the plaintiff's request for discovery to delay a ruling on the motion to dismiss pursuant to the U.S. Supreme Court's decisions in *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007):

> According to the plaintiff, "[w]ithout discovery, it is impossible to know whether such policies and procedures exist." *Id*. **A plaintiff may not, however, use discovery to obtain the facts necessary to establish a claim** that is plausible on its face pursuant to *Twombly* and *Iqbal* -- **even when those facts "are only within the head or hands of the defendant**[]." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). As the Supreme Court in *Iqbal* admonished, "**Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions**." 556 U.S. at 678-79.
>
> …
>
> Because the plaintiff alleged no facts to suggest, beyond the plaintiff's own speculation, that WMATA had policies and procedures in place [. . .], the Court is constrained to find that the Complaint fails to state a claim to relief that is plausible on its face.

*Felder*, 105 F. Supp. 3d at 59. (emphasis added.)

Similarly, in *Iqbal*, when the respondent had requested discovery in response to a motion to dismiss, the Court of Appeals directed the District Court to "cabin discovery in such a way as to preserve petitioners' defense of qualified immunity as much as possible in anticipation of a summary judgment motion. 556 U.S. at 684. The Supreme Court rejected such a procedure, noting "that the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process." *Id*. at 684-685, citing *Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side."). Significantly, "the language of *Iqbal*, 'not entitled to discovery' is binding on the lower federal courts." *New Albany Tractor v. Louisville Tractor, Inc*., 650 F.3d 1046, 1051 (6th Cir. 2011). To argue otherwise and "permit discovery whenever a plaintiff has failed to satisfy Rule 8's plausibility standard, is simply incompatible with *Iqbal* and *Twombly*." *Mujica v. AirScan Inc*., 771 F.3d 580, 593 n.7 (9th Cir. 2014).

Accordingly, multiple federal courts have expressly rejected requests for discovery prior to evaluating a pleading under the standard established by *Iqbal* and *Twombly*. (*See* WMATA Motion at 21 and n.3.)[1] The discovery protocol that Plaintiffs seek has been routinely turned

---

[1] *Vanzant v. City of Highland Park*, 2016 U.S. Dist. LEXIS 56356, *6 (E.D. Mich. Apr. 28, 2016) ("But before [the plaintiff] is allowed to take discovery, his Complaint must first meet the standards of *Iqbal* and *Twombly*."); *Hammonds v. Boston Scientific, Inc.*, 2011 U.S. Dist. LEXIS 162188, n.3 (W.D. Okla. Aug. 8, 2011) ("Reliance on a need for discovery, however, does not excuse plaintiff from adequately pleading her case under *Twombly* in the first place."); *Hammocks, LLC v. Harleysville Mut. Ins. Co*., 2011 U.S. Dist. LEXIS 86344, *8 (W.D.N.C. Aug. 4, 2011) (*Twombly* and *Iqbal* "make clear that a plaintiff first must assert a plausible claim before being permitted to use the invasive and costly tools of discovery"); *Essex Ins. Co. v. Miles*, 2010 U.S. Dist. LEXIS 128888, *8-9 (E.D. Pa. Dec. 3, 2010) ("While we acknowledge that it may be difficult without discovery for a plaintiff to plead this type of claim in light of *Twombly* and *Iqbal*, ... [t]he Supreme Court precludes the use of even limited discovery to overcome a pleading insufficiency."); *SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1192 (S.D. Fla. 2013) ("Before plaintiffs can overcome a dismissal motion and be entitled to merits discovery, they must allege sufficient facts that, if taken as true, state a claim for relief…Plaintiffs cannot merely recite the elements of their causes of action and suggest that discovery will permit them to set forth the facts supporting those elements."); *Canman v. Bonilla*, 778 F. Supp. 2d 179, 185 (D.P.R. 2011) ("the price of entry, even to discovery, is for the

aside as incompatible with the rule that discovery is available to a plaintiff only after it has been determined that the complaint satisfies the threshold requirements of Fed. R. Civ. P. 8 and *Twombly/Iqbal* -- not before. *See Carter v. DeKalb County, Ga.*, 521 Fed. Appx. 725, 728 (11th Cir. 2013) ("discovery follows the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim."). Consistent with this Court's ruling in *Felder*, the rulings of multiple federal courts, and the Supreme Court's ruling in *Iqbal* and *Twombly*, Plaintiffs cannot use discovery to cure their failure to properly plead a claim of failure to warn. Thus, Plaintiffs' negligent failure to warn claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### c. The Decedent Was a Trespasser at the Time of the Incident and Was Not Owed a Duty of Ordinary Care

#### i. The Facts in the Amended Complaint Establish that the Decedent Was a Trespasser at the Time of the Incident

Plaintiffs incorrectly argue that the Decedent's status at the time of the incident (invitee as opposed to trespasser) is a factual allegation the Court is required to accept as true. This is incorrect. The Decedent's status at the time she was on the train tracks is a question of law for the Court. *See Beausoleil v. Mass. Bay Transp. Auth.*, 138 F. Supp. 2d 189, 197 (D. Mass. 2001) ("Whether the decedent is a trespasser is a question of law for the court."); *Harmon v. Gen. Motors Corp.*, 999 F.2d 964, 966 (5th Cir. 1993) ("Where the basic facts are established, the plaintiff's status as a trespasser, invitee, or licensee is a question of law."); *Bradley v. NCAA*, 249 F. Supp. 3d 149, 175 (D.D.C. 2017) ("Whether there is a duty of care is a question of law.").

---

plaintiff to allege a factual predicate concrete enough to warrant further proceeding, which may be costly and burdensome"); *Briscoe v. Jefferson Cty.*, 2011 U.S. Dist. LEXIS 162701, *11 (E.D. Tex. Dec. 14, 2011) ("discovery is not the place to determine if one's speculations might actually be well-founded…the pleadings must have sufficient precision and factual detail to reveal that more than guesswork is behind the allegation"); *Rodriguez v. Quality Loan Serv. Corp.*, 2010 U.S. Dist. LEXIS 47556, *6 (D. Ariz. Apr. 22, 2010) ("Despite a lack of discovery, however, plaintiff must plead enough facts to state a claim to relief that is plausible on its face… She cannot use discovery to conduct a fishing expedition in hope that some fact supporting an allegation will be uncovered.").

Further, Plaintiffs' own facts demonstrate that the Decedent was struck and killed while she was a trespasser on the train tracks, an area where WMATA passengers are not permitted to enter. (*See* Amend. Comp. at ¶ 26.) *See Whitaker v. WMATA*, 1984 U.S. Dist. LEXIS 16712, *12 (D.D.C. May 14, 1984) ("When plaintiff in the instant case left the platform and entered the subway tunnel, he exceeded the scope of his status as a fare paying passenger who was lawfully on the premises and became a trespasser."), *Id*. at *14 ("It is clear that there is no justification for a reasonable person to believe that [WMATA] would consent to the entry of the public into the subway tunnel and onto the tracks."). How and why the Decedent ended up on the train tracks at the time she was struck by the train is also irrelevant. *See id*. at *15 ("The definition of a trespasser, as set forth in *Firfer* applies 'regardless of how the person entered the premises (accidently, intentionally, or inadvertently), or why the person remained on the property.'").

Therefore, this Court, in resolving a question of law, should find that the Decedent was a trespasser at the time she was on the train tracks and struck and killed by the train.

### ii. The Decedent, as a Trespasser, Was Not Owed a Duty of Ordinary Care

In their opposition, Plaintiffs argue that based on *Copeland v. Baltimore O.R. Co*., 416 A.2d 1 (D.C. Cir 1980), the Decedent was owed a duty of ordinary care as she was a "known trespasser." Plaintiffs' reliance on *Copeland* is misplaced. In its Motion, WMATA addressed how the D.C. Court of Appeals has refused to recognize a duty of "reasonable care under the circumstances." (*See* WMATA Motion at 14-16.) Further, WMATA addressed how in *Holland v. Baltimore & O.R. Co*., 431 A.2d 597 (D.C. 1981) and *Lacy v. Sutton Place Condo. Ass'n*, 684 A.2d 390 (D.C. 1996), two post-*Copeland* cases, the D.C. Court of Appeals specifically rejected any attempt to have a sliding standard of care ("under the circumstances") for trespassers. The *Holland* and

*Lacy* rulings were direct responses to plaintiffs' attempts to persuade the courts to adopt a "reasonable care" standard to trespassers "under the circumstances."

In *Whitaker v. WMATA,* the D.C. Circuit also specifically recognized that there was doubt as to any heightened standard of care once the trespasser is known, as the D.C. Court of Appeals after *Copeland* "had cast doubt on this proposition." 804 F.2d 153 n.3 (D.C. Cir. 1986) ("*See Holland v. Baltimore & O. R.R.*, …, 431 A.2d at 601 ("[i]n this jurisdiction, trespassers may, generally speaking, only recover from landowners for injuries that were willful, wanton, or that resulted from maintenance of a hidden engine of destruction"); *Washington Metropolitan Area Transit Auth. v. Ward*, …, 433 A.2d at 1074 (D.C. 1981) (trespasser only owed a duty by defendant "not to intentionally, willfully, or wantonly injure her or maintain a hidden engine of destruction")", also citing *Estrada v. Potomac Electric Power Co.,* 488 A.2d 1359, 1360 n.1 (D.C. 1985)).

In an attempt to avoid the effect of these post-*Copeland* rulings, Plaintiffs make a distinction between reasonable care and ordinary care as applied to trespassers under D.C. law. (*See* Pls. Opp. at 13.) However, they are one in the same and, therefore, such a distinction is irrelevant. *See* D.C. Std. Civ. Jury Instr. No. 5-2, Negligence Defined ("Negligence is the failure to exercise ordinary care. To exercise ordinary care means to use the same caution, attention or skill that a reasonable person would use under similar circumstances."); D.C. Std. Civ. Jury Instr. No. 8-1, Common Carrier – Degree of Care ("To use ordinary care means to act as a reasonable person would under the circumstances.").

Plaintiffs also rely on various cases that do not change the fact that a trespasser is not owed a duty of ordinary care. *Daisy v. Colonial Parking*, a 1963 case, does not involve a trespasser who was seen. *See* 331 F.2d 777, 778 (D.C. 1963) (discussing how the plaintiff tripped

on a chain from a post that was hung in an alleyway in an area that trespassers were known to frequent.) Unlike the allegations in *Daisy*, here Plaintiffs have not alleged that WMATA had prior knowledge of trespassers entering the tracks where the Decedent was injured. *Gould v. DeBeve*, also a case decided decades before *Holland*, *Lacy* and *Estrada,* dealt with a two-year old child who was trespassing and fell out of a window. *See* 330 F.2d 826, 827 (D.C. 1964). Any sliding-scale argument under *Gould* was rejected by, the Court of Appeals in *Arbaugh's* (which was specifically cited to in *Holland* as being the standard of care owed to trespassers in the District of Columbia):

> The opinion indicated that the foreseeability of the child's presence might justify the imposition of a higher standard of care on the landowner than is usually owed to trespassers, but left the test of liability essentially unchanged. **To our way of thinking, this approach will only generate further confusion over the duty owed to various "types" of trespassers**.

*Arbaugh's Rest., Inc.*, 469 F.2d 97, 104-105 (D.C. 1972) (emphasis added.).

Finally, Plaintiffs cite to a 1991 District Court opinion in *Johnson v. WMATA* for the proposition that *Holland* did not overrule *Copeland*. However, in the prior *Johnson* opinion, the D.C. Circuit found "that under District of Columbia law" the decedent "became a trespasser when she jumped onto the tracks" and "[t]respassers may only recover for 'intentional, wanton or willful injury or maintenance of a hidden engine of destruction.'" *Johnson*, 883 F.2d 125, 130 (D.C. Cir. 1989), citing *Holland*, 431 A.2d at 599. And, in the 1991 opinion, the District Court refused to apply the *Copeland* "two-pronged definition of wantonness", reasoning that an application of ordinary care to the plaintiff who had trespassed would "ignore the clear instructions of the Court of Appeals." *Johnson v. WMATA*, 764 F. Supp. 1568, 1573-1574 (1991); *see also id*. at 1575 (even though there was a claim that the train operator could have avoided striking the decedent, "…according to our Court of Appeals, because the decedent was a

trespasser at the time of the accident, the plaintiffs can only recover for her death if they prove that the train operator acted with reckless disregard for the safety of others.")

Therefore, as the Decedent was not owed ordinary care as she was a trespasser at the time of the incident, WMATA cannot be held liable for common law negligence and those claims must be dismissed as a matter of law.

### d. Plaintiffs Have Not Alleged a Claim That WMATA's Conduct Was in Wanton Disregard of the Decedent's Safety

WMATA, relying on the standards for pleading as established in *Twombly* and *Iqbal*, argued in its Motion that Plaintiffs failed to set forth sufficient factual detail to state a claim that WMATA wantonly injured the Decedent when she trespassed on to the train tracks. (*See* WMATA Motion at 19-21.) Plaintiffs argue that they have properly plead their claim, that this Court is required to accept the factual allegations in the Amended Complaint, and that all inferences must be construed in their favor. However, this is incorrect as Plaintiffs rely on the pleading standard pre-*Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 555 ("…tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (The Court "need not, however, 'accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint.'"); *Iqbal*, 556 U.S. at 678 (The Court need not accept "[t]hreadbare recitals of the elements of a cause of action," which are essentially legal conclusions.)

Under the current pleading standard, to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. A claim is facially plausible when the court can reasonably infer from the factual content pleaded that the defendant is liable for the alleged misconduct. *Id*. Plausibility requires more than a "sheer possibility that the defendant has acted

unlawfully…" *Id.* Additionally, the factual allegations "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and to permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In the Amended Complaint, Plaintiffs allege that the Decedent was observed, or otherwise known, while trespassing, yet provide no facts as to who made this observation, when it was made, or how it was made. However, Fed. R. Civ. P. 12(b)(6) does not permit "naked assertions" to withstand a motion to dismiss. *See United States ex rel. Keaveney v. SRA Int'l, Inc.*, 219 F. Supp. 3d 129, 150-151 (D.D.C. 2016) ("Such vague and conclusory allegations are not sufficient to state a claim under Rule 12(b)(6)", citing *Iqbal*, 556 U.S. at 678 (reasoning that "naked assertions devoid of further factual enhancement" are insufficient to state a claim for relief)); *Swaringen v. Rosier*, No. 4:16-2838-RBH-TER, 2016 U.S. Dist. LEXIS 185601, *7 (D.S.C. Sep. 22, 2016) (dismissing an assault claim when "the pleadings mentioned no specific time, place, or person involved" and did not "contain facts in regard to who did what to whom and when.") Also, pursuant to Fed. R. Civ. P. 9(f), "averments of time and place are material" in considering the sufficiency of a pleading.

Plaintiffs then argue that the Decedent being elderly and on the station platform demonstrates wanton behavior on the part of WMATA. Yet, in order for WMATA's alleged wanton conduct to even begin to be evaluated, Plaintiffs need to allege sufficient factual detail that WMATA knew that the Decedent was present on the tracks. *See Estrada,* 488 A.2d at 1360 n.1 ("[e]ven this duty to abstain from willful or wanton conduct does not arise unless the owner has actual, rather than merely constructive, knowledge of the trespasser's presence on the property and is cognizant that he is in danger of immediate rather than merely possible harm.") Plaintiffs'

allegations that WMATA had notice that the Decedent was on the train tracks, without identifying who made this observation, how this observation was made or when it was made are insufficient.

To the extent Plaintiffs are alleging negligence for while the Decedent was on the station platform, there is no such claim as (1) the Decedent did not suffer any injury while on the station platform and (2) one's status as a trespasser is determined irrespective of how they ended up in that situation (accidently, intentionally, or inadvertently). Further, as previously discussed in WMATA's Motion (pp. 16-18), such conduct is no different from everyday passengers and does not constitute "extreme recklessness" or an "utter disregard for other's rights" that would support a claim for wanton behavior. *Safeway Trails, Inc. v. Schmidt*, 225 A.2d 317, 320 (D.C. 1967) (defining wanton behavior). Wanton behavior is more than mere negligence or mistake. *Johnson*, 764 F. Supp. at 1573. Plaintiffs have failed to address this argument in their opposition brief.

Finally, Plaintiffs failed to address the District Court of Maryland's ruling in *Glenn v. CSX Transp. Inc.*, in which the Court did not find wanton conduct, in response to a motion to dismiss on the part of the defendant train company.  In that case, there were allegations of not having signage to warn members of the public that they were on train tracks, knowing and allowing the public to cross across its tracks for a long period of time, not having watchmen to prevent injury from those on the tracks, and not having cameras to observe trespassers on the tracks. *See* Case No. RDB-14-802, 2014 U.S. Dist LEXIS 159224, *13-*14 (D. Md. Nov. 12, 2014). If such conduct, which is similar to the allegations in this case, does not constitute wanton conduct then the result should be the same here.

Therefore, Plaintiffs have failed to plead a claim of wanton behavior on the part of WMATA in the death of the Decedent and the Amended Complaint must be dismissed.

## II.    <u>CONCLUSION</u>

**WHEREFORE**, Defendant Washington Metropolitan Area Transit Authority requests that the Court grant the Motion and (1) dismiss Plaintiffs' negligent failure to warn claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6); (2) dismiss Plaintiffs' claim for common law negligence and (3) dismiss the Amended Complaint as Plaintiffs have failed to allege a claim that WMATA's conduct was in wanton disregard for the Decedent's safety.

Respectfully submitted,

**KIERNAN TREBACH, LLP**

*/s/ Nimalan Amirthalingam*
Nimalan Amirthalingam, Esquire (#485117)
1233 20th Street, NW,  Suite 800
Washington, D.C. 20036
T: (202) 712-7000
F: (202) 712-7100
namirthalingam@kiernantrebach.com
*Attorney for Defendant Washington Metropolitan Area Transit Authority*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on May 25, 2021, a copy of the foregoing was served *via* the

Court's electronic filing system on:

John F.X. Costello, Esquire
Costello & Edwards, LLC
5845 Allentown Road
Camp Springs, MD 20746
*Attorney for Plaintiffs*

Matthew A. Nace, Esquire
Paulson & Nace, PLLC
1025 Thomas Jefferson St., NW
Suite 810
Washington, D.C. 20007
*Attorney for Plaintiffs*

*/s/ Nimalan Amirthalingam*
Nimalan Amirthalingam, Esquire (#485117)