UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CARLA DANCY HINES *et al.*,

     *Plaintiffs*,

    v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

     *Defendant.*

No. 21-cv-679 (DLF)

## MEMORANDUM OPINION

Senella Dancy was struck and killed by a train after she mistakenly wandered onto the tracks. Her children, Carla Dancy Hines and Anthony Dancy, bring this negligence suit against the Washington Metropolitan Transit Authority (WMATA) seeking to recover for her alleged wrongful death. Before the Court is WMATA's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 13. For the reasons that follow, the Court will grant the motion in part and deny the motion in part.

## I.    BACKGROUND[1]

On March 14, 2019, Senella Dancy entered WMATA's Fort Totten Station. Am. Compl. ¶¶ 6, 14, Dkt. 10. Dancy was elderly, suffered from "brain atrophy with senile changes," and had never ridden the subway before. *Id.* ¶ 7. Dancy was in the station for over two and a half hours, pacing the platform while unsure of which train to board. *Id.* ¶¶ 15–16. WMATA's employees allegedly observed, and its station cameras captured, her confused behavior. *Id.* ¶¶

---

[1] The Court assumes the truth of material factual allegations in the complaint. *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

17–18.  At some point, Dancy passed through an unmarked gate and walked onto the train tracks.
*Id.* ¶¶ 21, 26.  While on the tracks, she was hit and killed by a WMATA train.  *Id.* ¶ 26.

The plaintiffs allege that Dancy's death resulted from WMATA's negligent and/or
wanton acts or omissions during the time she wandered the station platform and once she walked
onto the tracks.  *See id.* ¶ 25–26, 39–40.  First, they allege that WMATA failed to place warning
signs on gates leading to the tracks or to otherwise warn about the tracks.  *Id.* ¶¶ 23–24.  Next,
they claim that WMATA failed to take other safety measures: it did not lock or otherwise secure
the gates from the platform to the tracks, *id.* ¶ 23, and did not properly monitor the station, *id.* ¶¶
18–21, 25.  Specifically, they allege that the station's surveillance video was monitored at all
times in the station manager's kiosk and in the WMATA railway operation command center
(ROCC), as was required, yet no one did anything to help Dancy.  *Id.* ¶¶ 19–21.  But they also
claim that WMATA did *not* monitor the security surveillance video, nor did the station manager
"keep a proper look out" while in his kiosk or notify the ROCC if the kiosk was left unattended.
*Id.* ¶ 25(d), (k).

The plaintiffs further allege that WMATA observed Dancy "walk up the tracks for
approximately 100 yards" but failed to take any action.  *Id.* ¶¶ 21.  Alternatively, they claim that
WMATA failed to recognize that she had entered the tracks.  *Id.* ¶ 25(g).  Plus, WMATA
employees allegedly failed to notify the ROCC or take other steps to stop incoming trains from
entering the station.  *Id.* ¶¶ 22, 25(l).  And the train operator, according to the plaintiffs, failed
"to pay full time and attention" and to push the Emergency Stop button.  *Id.* ¶ 25(n), (o).  Thus,
WMATA's employees did not "stop the Metro train from operating and striking" Dancy.  *Id*. ¶
25(m).

Finally, the plaintiffs make an overarching allegation that WMATA failed to comply with "applicable WMATA Safety Rules and Regulations" and "applicable WMATA Standard Operating Procedures." *Id.* ¶ 25(q), (r).[2]

The plaintiffs filed suit against WMATA in Superior Court on January 28, 2021. Compl., Dkt. 1-1. WMATA removed the action to federal court on March 15, 2021 under D.C. Code § 9-1107.01(81). Def.'s Notice of Removal, Dkt. 1. The plaintiffs then filed an amended complaint, seeking damages under D.C.'s wrongful death and survival statutes, *see* D.C. Code § 12-101; D.C. Code § 16-2701. WMATA moved to dismiss on sovereign immunity grounds and for failure to state a claim. *See* Def.'s Mot. to Dismiss, Dkt. 13-1. The plaintiffs oppose the motion and seek jurisdictional discovery. *See* Pl.'s Memo. in Opp'n, Dkt. 16-1. The motion is now ripe for review.

## II.    LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted). Nonetheless, the burden is on

---

[2] Elsewhere in the Complaint, the plaintiffs refer specifically to WMATA's *Metro Safety Rules and Procedures Handbook*. Am. Compl. ¶¶ 35, 39.

the plaintiff to establish subject-matter jurisdiction. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). And the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal

quotation marks omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is

not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.*  Ultimately, "[d]etermining whether a

complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Id.* at 679.

III.   ANALYSIS

WMATA moves to dismiss on two grounds.  First, it argues that the failure to warn claim

is barred by its sovereign immunity and should be dismissed under Rule 12(b)(1).  *See* Def.'s

Mot. at 4–10.  Second, it seeks dismissal of the remainder of the complaint under Rule 12(b)(6)

for failure to state a claim.  *See id.* at 10, 18.  The Court takes each argument in turn.

A.   Sovereign Immunity

WMATA originated through a Compact signed by Maryland, Virginia, and the District of

Columbia, and it enjoys the sovereign immunity of those signatories.  *See Jones v. WMATA*, 205

F.3d 428, 431–32 (D.C. Cir. 2000).  The Compact, however, partially waives WMATA's

sovereign immunity for tort actions.  Section 80 states that WMATA "shall not be liable for any

torts occurring in the performance of a governmental function," but that WMATA "shall be

liable for its contracts and for its torts and those of its Directors, officers, employees and agent[s]

committed in the conduct of any proprietary function."  D.C. Code § 9-1107-01(80).

There are "two alternative tests for identifying 'governmental' functions under the

WMATA Compact." *Burkhart v. WMATA*, 112 F.3d 1207, 1216 (D.C. Cir. 1997).  The test

relevant here[3]—the discretionary function test—evaluates whether the activity at issue is

---

[3] The other test asks whether the activity in question is a "quintessential governmental" function,
such as law enforcement. *Burkhart*, 112 F.3d at 1216 (alteration and internal quotation marks

"discretionary" or "ministerial." *Id.*; *see Chow v. WMATA*, 391 F. Supp. 3d 37, 41 (D.D.C.

2019).  If the activity is discretionary, WMATA enjoys immunity.  If it is ministerial, WMATA

does not.  *See Burkhart*, 112 F.3d at 1216.  This is the same "dichotomy employed by the Federal

Tort Claims Act (FTCA)." *Id.*

To determine whether a function is discretionary or ministerial, courts first ask "whether

any 'federal statute, regulation, or policy specifically prescribes a course of action for an

employee to follow.'" *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995) (quoting *United States v.*

*Gaubert*, 499 U.S. 315, 322 (1991)).  If so, "[t]he only issue is whether the employee followed

the directive," and, if not, sovereign immunity does not attach.  *Id.*  Such policies include

mandatory internal policies.  *See Ignatiev v. United States*, 238 F.3d 464, 466–67 (D.C. Cir.

2001); *Chow*, 391 F. Supp. 3d at 42–43; *Wesberry v. United States*, 205 F. Supp. 3d 120, 135–37

(D.D.C. 2016).  If no mandatory policy exists, courts next decide whether the type of decision at

issue is "of the nature and quality that Congress intended to shield from tort liability." *Cope*, 45

F.3d at 448 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)).  Courts look to

"whether the type of decision being challenged is grounded in social, economic, or political

policy." *Id.* at 449.

### 1.     *Failure to Warn*

According to WMATA, its decision whether to warn of the tracks is discretionary, and

thus it is immune from the plaintiffs' failure to warn claim.  Def.'s Mot. at 6–10.  But contrary to

WMATA's position, *see id.* at 6–7, the D.C. Circuit has not uniformly held that failure to warn

---

omitted); *see Chow*, 391 F. Supp. 3d at 41 n.2.  Though WMATA's reply brief asserts that the
activities at issue here were "governmental" in that they "involved quasi-legislative policy
decisions that are discretionary in nature and immune from suit," *see* Def.'s Reply at 2, Dkt. 19,
this argument appears to conflate the "quintessentially governmental" test with the discretionary
function test.

claims are always barred by sovereign immunity.  *See Chow*, 391 F. Supp. 3d at 41–42

(explaining, in the context of a failure to warn claim, that "[t]his case's path through the

discretionary function test 'morass' is currently unclear").  For instance, *Cope v. Scott* held that

sovereign immunity did not preclude judicial review of the National Park Service's failure to

post a warning sign along a curve on a slippery road.  45 F.3d at 446, 451.  The court explained

that the commuter road already had multiple signs along the stretch including the curve, so the

decision not to post a particular warning did not implicate aesthetic or other public policy

concerns.  *See id.* at 452.  In *Abdulwali v. WMATA*, however, the court held that sovereign

immunity barred review of the design of warning signs on Metro cars.  *See* 315 F.3d 302, 305

(D.C. Cir. 2003).

Applying the discretionary function test here, the Court first must determine whether a

mandatory policy required WMATA to place warning signs near the tracks.  If such a policy

exists, WMATA is not immune.  *Ignatiev*, 238 F.3d at 466; *Chow*, 391 F. Supp. 3d at 41. The

complaint alleges that that WMATA generally failed to follow its standard operating procedures

and safety rules and regulations.  Compl. ¶ 25(p), (q), (r).  Although the complaint does not point

to any *specific* policy, regulation, or code requiring a particular warning, *see* Def.'s Mot. at 8–9,

the plaintiffs seek jurisdictional discovery to determine "whether WMATA has . . . mandatory

internal policies and/or procedures" regarding "[w]arning patrons with respect to the tracks."

Pls.' Opp'n at 9.  In similar circumstances, courts have granted such requests.  *See, e.g., Chow*,

391 F. Supp. 3d at 42–43 (granting request for jurisdictional discovery to see if WMATA had a

mandatory policy that required warning customers about escalators with known safety problems

even where complaint did not point to any specific policy); *Ignatiev*, 238 F.3d at 465–67

(granting jurisdictional discovery about the Secret Service's internal guidelines for protection of

foreign embassies in the District of Columbia); *Wesberry*, 205 F. Supp. 3d at 134, 136–37

(permitting discovery into mandatory National Park Service policies regarding various safety

measures, even where plaintiffs did not allege the violation of any policy in their complaint). *But*

*see Felder v. WMATA*, 105 F. Supp. 3d 52, 59 (D.D.C. 2015) (declining to grant discovery where

the plaintiff "alleged no facts to suggest . . . that WMATA had policies and procedures in place

related to employee training"). A plaintiff must have "ample opportunity to secure and present

evidence relevant to the existence of jurisdiction. *Phx. Consulting Inc. v. Rep. of Angola*, 216

F.3d 36, 40 (D.C. Cir. 2000) (internal quotation omitted), and "[t]his Circuit's standard for

permitting jurisdictional discovery is quite liberal," *Diamond Chem. Co. v. Atofina Chems., Inc.*,

268 F. Supp. 2d 1, 15 (D.D.C. 2003). Because the D.C. Circuit "require[s] that plaintiffs be

given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of

a 12(b)(1) motion," *Ignatiev*, 238 F.3d at 467, "dismissal would be premature" at this stage.

*Chow*, 391 F. Supp. 3d at 42. Accordingly, the Court will grant the plaintiff's request for

jurisdictional discovery and deny WMATA's motion to dismiss the plaintiffs' failure to warn

claim, without prejudice, as premature. *See Chow*, 391 F. Supp. 3d at 43.[4]

        2.     *Failure to Take Other Safety Measures*

WMATA fails to address the plaintiffs' claims that it negligently failed to lock the gate

leading to the tracks and that it did not adequately monitor the station, seemingly conflating them

---

[4] Because the Court will grant jurisdictional discovery, it will not address the second prong of the discretionary function test. *See Cope*, 45 F.3d at 448 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813 (1984)).

The Court emphasizes that its discovery grant is "strictly limited to jurisdictional issues." *Wesberry*, 205 F. Supp. 3d at 136. *See Phx. Consulting*, 216 F.3d at 40 (jurisdictional discovery must be "carefully controlled and limited" in order to "avoid burdening a sovereign that proves to be immune from suit.").

with the failure to warn claim.  *See* Def.'s Reply at 1–2, Dkt. 19.  For their part, the plaintiffs

characterize these claims as involving WMATA's negligent operation and/or maintenance of the

station, for which it is not immune.  Pls.' Opp'n at 7; *see Dant v. District of Columbia*, 829 F.2d

69, 75 (D.C. Cir. 1987).

      "[S]overeign immunity claims are jurisdictional and thus cannot be waived by failure to

present the defense to the trial court."  *Burkhart*, 112 F.3d at 1216.  And the Court cannot move

to the merits without assuring itself of its jurisdiction.  *See Steel Co. v. Citizens for a Better*

*Environment*, 523 U.S. 83, 93–95 (1998).  Though the plaintiffs describe their claims as relating

to operation and/or maintenance, WMATA's decisions about these safety measures—for

instance, whether to keep the gates in front of the tracks locked, or whether to engage in

continuous surveillance of the station—may in fact be discretionary.  *See Harris v. WMATA*, 490

F. Supp. 3d 295, 312–14 (D.D.C. 2020) (finding that failure to require live-monitoring of

WMATA's security cameras constituted a discretionary policy choice); *Wesberry*, 205 F. Supp.

3d at 124, 129–33 (finding that the National Park Service's decisions to implement certain safety

measures but not others were grounded in policy concerns); *Coates v. WMATA*, No. 15-cv-2006,

2016 WL 4543991, at *4 (D.D.C. Aug. 31, 2016) (finding that WMATA's decision to install

unlocked shutoff panels in its buses was a design decision falling under the discretionary

function exception).  But the existence of a mandatory policy requiring WMATA to lock gates in

front of the track, or to continually monitor the station for confused and vulnerable patrons,

would nevertheless prevent a sovereign immunity defense.  *See Wesberry*, 205 F. Supp. 3d at

133–35.  And the plaintiffs request jurisdictional discovery to determine whether WMATA has

mandatory policies about "[m]onitoring video cameras," "[a]ssisting disabled, elderly, and/or the

infirm," or the "[o]peration and maintenance of gates."  Pls.' Opp'n at 9.  Therefore, for the same

reasons discussed above, the Court will deny WMATA's motion without prejudice (to the extent

it seeks dismissal of these allegations) and grant the plaintiffs' jurisdictional discovery request.[5]

### B.      Failure to State a Claim

The plaintiffs further allege that WMATA acted negligently and/or wantonly once Dancy

stepped on the tracks, by failing to stop trains from entering the station and by not pressing the

train's emergency brake.  Am. Compl. ¶¶ 22, 25(l), (n), (o).  With respect to these claims,

WMATA does not raise a sovereign immunity defense, nor could it because these actions cannot

be described as implicating policy choices.  *See Wesberry*, 205 F. Supp. 3d at 129 ("[G]arden-

variety decisions, such as the everyday, split-second choices a government employee makes

while operating a vehicle, are not protected by the exception." (internal quotation omitted));

*Coates*, 2016 WL 4543991, at *5 ("A WMATA bus driver's allegedly negligent operation of a

WMATA bus . . . is 'ministerial' conduct that is not subject to immunity.").  Instead, WMATA

moves to dismiss the plaintiffs' negligence claim on the ground that Dancy was a trespasser and

the complaint fails to allege wanton conduct.

In the District of Columbia, "[t]he elements of a common law action for negligence are

(1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by the

defendant, and (3) damage to the plaintiff, proximately caused by the breach of duty."  *Powell v.

District of Columbia*, 634 A.2d 403, 406 (D.C. 1993)).  In a premises liability case, the duty

owed by the landowner depends on whether the plaintiff was lawfully on the property or whether

she was a trespasser.  *See Boyrie v. E & G Prop. Servs.*, 58 A.3d 475, 477 (D.C. 2013).  A person

lawfully on the landowner's property is owed a duty of reasonable care.  *Id.*

---

[5] The plaintiffs allege only that WMATA negligently failed to lock and secure the gates; they do not claim that they were negligently maintained.  Am. Compl. ¶¶ 23, 25(s).  Accordingly, discovery shall be limited to whether a mandatory policy required locking the gates.

Trespassers, by contrast, "may only recover for intentional, wanton or willful injury or maintenance of a hidden engine of destruction." *Holland v. Baltimore & O. R. Co.*, 431 A.2d 597, 599 (D.C. 1981) (en banc) (internal quotation omitted). Trespassers are those "who enter[] or remain[] upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Boyrie*, 58 A.3d at 477–78 (internal quotation omitted). This court has held that fare-paying customers in a subway station become trespassers when they leave the platform and enter the tracks. *See Whitaker v. WMATA*, 1984 U.S. Dist. LEXIS 16712, at *10, *12 (D.D.C. May 14, 1984); *Coulston v. WMATA*, No. 19-cv-2060, 2020 WL 1236563, at *2 (D.D.C. March 13, 2020). The lack of a warning sign or a lock on the gates to the tracks does not warrant a different conclusion. *See Whitaker*, 1984 U.S. Dist. LEXIS at *10. Moreover, a person who lacks her full mental capacities can still be considered a trespasser. *See Copeland v. Baltimore & O.R. Co.*, 416 A.2d 1, 2–3 (D.C. 1980). Following this authority, Dancy became a trespasser once she entered the tracks.

The plaintiffs resist this conclusion by arguing that Dancy was a "known trespasser" to whom WMATA owed a duty of ordinary care. Pls.' Opp'n at 17 (citing *Copeland*, 416 A.2d at 3 ("Once the presence of a trespasser is known, the railroad must exercise ordinary care not to injure the trespasser.")).[6] The Court is unpersuaded. True, the plaintiffs allege that Dancy was in the station for over two and a half hours pacing the platform, *see* Am. Compl. ¶ 15–20, and that WMATA "observed" her "walk up the tracks for approximately 100 yards," *id.* ¶ 21. But they also allege that WMATA "[f]ail[ed] to recognize that [Dancy] had entered onto the train

---

[6] The plaintiffs and WMATA dispute whether the *Copeland* "known trespasser" standard remains good law. *Compare* Pls.' Opp'n at 11–14, *with* Def.'s Mot. to Dismiss at 14–16; Def.'s Reply at 7–10. Because the plaintiffs have not sufficiently alleged that WMATA knew that Dancy was on the tracks, *see infra* at 12, the Court need not resolve the issue at this time.

tracks and/or upon observing [the] same failed to do anything about it." *Id.* ¶ 25(g).  While the

plaintiffs may plead in the alternative, such claims must still contain "sufficient factual matter . .

. to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.*  The complaint fails to allege *who*

observed Dancy on the tracks.  It does not say whether it was the train operator, an employee far

away from the scene, or an employee monitoring WMATA's surveillance cameras.  Because the

plaintiffs' "opaque and internally contradictory" claims do not plausibly allege that WMATA

had the requisite knowledge of Dancy's presence, they are "legally insufficient" to convert

Dancy's status into that of a known trespasser.  *See Crawford v. Barr*, 17-cv-798, 2020 WL

7051554, at *1 (D.D.C. Sept. 24, 2020).

   For similar reasons, the complaint does not plausibly allege that WMATA acted

wantonly.  *See Coulston*, 2020 WL 1236563, at *3.  "The word 'wanton' means characterized by

extreme recklessness and utter disregard for the rights of others."  *Safeway Trails, Inc. v.

Schmidt*, 225 A.2d 317, 320 (D.C. 1967).  In addition, the resulting harm "must be foreseeable to

a reasonable person." *Copeland*, 416 A.2d at 4.  Putting aside their claims about WMATA's

failure to warn and take other safety measures, the plaintiffs allege only that WMATA acted

negligently and/or wantonly by not stopping the oncoming train from entering the station and

hitting Dancy.  Without more detail, the plaintiffs cannot plausibly state a claim that WMATA

acted *recklessly* with *utter disregard* for her life.  For instance, the plaintiffs do not contend that

the train operator was under the influence, *see Johnson v. WMATA*, 764 F. Supp. 1568, 1574

(D.D.C. 1991), or that the train was travelling at an excessive speed, *see Whitaker*, 1984 U.S.

Dist. LEXIS at *31, when WMATA failed to stop the incoming trains and hit the train's emergency button.

For these reasons, the Court will dismiss, without prejudice, the plaintiffs' claims that WMATA acted negligently and/or wantonly in failing to stop incoming trains and to hit the train's emergency button.

## CONCLUSION

Accordingly, WMATA's motion to dismiss is granted in part and denied in part. An order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

February 9, 2022

13